IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRAIG LAURENCE CONKLIN, #A5021908, | ) ) ) Civ. No. 19-00087 JMS-RT |
| Plaintiff, | ) ORDER DISMISSING COMPLAINT ) WITH LEAVE TO AMEND ) |
| vs. | ) ) |
| NOLAN ESPINDA, et al., | ) ) |
| Defendants. | ) ) |
| _____ | ) |

## ORDER DISMISSING COMPLAINT
## WITH LEAVE TO AMEND

Before the court is pro se Plaintiff Craig Laurence Conklin's prisoner civil

rights Complaint brought pursuant to 42 U.S.C. § 1983. Conklin alleges that

officials and staff of the Hawaii Department of Public Safety ("DPS Defendants"),

the Halawa Correctional Facility ("HCF Defendants"), and the Hawaii Community

Correctional Center ("HCCC Defendants") (collectively, "Defendants"), violated

his civil rights while he was incarcerated, first at HCCC, and then at HCF.[1]

---

[1] Defendants named in official capacities only: DPS Director Nolan Espinda, Health Director John/Jane Doe 1, Institutions Director John/Jane Doe 2; HCCC physician Dr. Gary Saldona, nurse Norma Nishimoto; HCF physicians Dr. Toyama, Dr. Yoo, Dr. Frauens, Administrator Dovie Borgess, ADA Representative Mahina Assily, Captain Snook, Chief of Security Lyle Antonio, Case Manager Francis Mufao, and John/Jane Does 3-38. Inmate Tupuelo is named in his individual capacity only.

For the following reasons, the Complaint is DISMISSED for Conklin's failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Conklin may file an amended pleading alleging those claims that he elects to proceed with in *this* action, on or before July 8, 2019. He may also file a second action at his discretion, alleging those claims that would be improperly joined in any amended pleading, as explained below. This action will be dismissed if Conklin fails to timely file an amended pleading that cures the deficiencies noted in this Order.

## I. STATUTORY SCREENING

The court must conduct a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Specific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The court must accept the allegations of the complaint as true, *Erickson*, 551 U.S. at 94, and construe the pleading in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

(citations omitted).  The court must grant leave to amend if it appears the plaintiff

can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, but if a claim or

complaint cannot be saved by amendment, dismissal with prejudice is appropriate.

*Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[2]

Conklin asserts claims regarding incidents that allegedly occurred while he

was incarcerated at HCCC between January 9 and February 22, 2018, and

thereafter, while he was incarcerated at HCF between February 22, 2018, until

February 19, 2019, when he filed the Complaint.[3]

### A.    **Counts I-III:   HCCC, January 9 to February 22, 2018**

At his HCCC medical intake examination on January 9, 2018, Conklin

requested to: (1) continue his prescription pain medications for severe, chronic

pain and/or be placed in a detoxification program to prevent opiate withdrawal

symptoms; and (2) be released temporarily for a previously scheduled

colonoscopy.  *See* Compl., ECF No. 1, PageID #8 (Count I), and #10 (Count III).

Dr. Saldona denied these requests and assured Conklin that HCCC medical staff

---

[2] Conklin's facts are accepted as true and construed in the light most favorable to him on screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[3] Conklin was convicted in *State v. Conklin*, 3CPC-17-0000287 (Haw. 3d Cir. Jan. 9, 2018), under Haw. Rev. Stats. § 711-1108.5.  *See* http://www.courts.state.hi.us/; (last visit May 15, 2019), and released on parole April 11, 2019.  https://www.vinelink.com/#/searchResults/1.

4

would closely monitor him to address any potential withdrawal symptoms.

Conklin alleges he experienced severe opiate withdrawal symptoms, and possible

internal bleeding from the lack of a colonoscopy, which caused him fear, anxiety,

pain, insomnia, and depression.

On January 11, 2018, HCCC nurse Nishimoto confiscated Conklin's

personal crutches, without providing him a cane, crutches, or wheelchair. *Id.*,

PageID #9 (Count II). Conklin alleges he is disabled from injuries in his hips and

legs, and Nishimoto's actions "forced" him to walk without needed medical

mobility devices until his February 22, 2018 transfer to HCF, causing him

impaired mobility, chronic pain, depression, and anxiety. *Id.*

Conklin alleges Saldona and Nishimoto violated his right to be free from

cruel and unusual punishment under the Eighth Amendment and his rights under

the Americans With Disabilities Act ("ADA), 42 U.S.C. § 12132, *et seq*.

## B.    Counts IV-XVIII:  HCF, February 22, 2018 to February 19, 2019

When he arrived at HCF, Conklin renewed his requests for his prescription

pain medications and for a colonscopy, but Dr. Toyama denied these requests. *Id.*,

PageID #11-12 (Counts IV, V). Conklin alleges this exacerbated his chronic pain

and caused insomnia, fear, anxiety, depression, and possible internal bleeding. He

maintains that the denial of prescription pain medication interfered with "major

life activities" including "walking, standing, lifting, bending, breathing, learning, reading, concentration, thinking, communicating, working, hygien [sic]." *Id.*, PageID #11.

Conklin admits that Dr. Toyama gave him Gabapentin[4] to control his "severe[,] chronic pain." *Id.*, PageID #21 (Count XIV). He complains, however, that HCF medical staff instructed him to take the Gabapentin crushed in water, which caused "caustic" burns in his throat and that this is an unauthorized way to take this medication. *Id.* Conklin refused the Gabapentin after several weeks, but he does not detail whether he was prescribed other pain relief medication.

Conklin was assigned to HCF's general population; he immediately requested "comfort items," including a pillow, supportive mattress, and a leg pillow from the "H.C.F. Americans With Disabilities Act ("ADA") representative."[5] *Id.*, PageID #20 (Count XIII). He was given a 2-inch mattress without a pillow, which he alleges exacerbated his "degenerative conditions." *Id.*

---

[4] Gabapentin is used, *inter alia*, to control nerve pain, spinal injuries, fibromyalgia, and seizure disorders, and "is widely used to ease the symptoms of drug and alcohol detoxification." https://www.pewtrusts.org/en/research-and-analysis. (discussing Gabapentin's recent use and abuse as an opiate alternative).

[5] Conklin identified Mahina Assily as HCF's "A.D.A. Representative." ECF No. 1, PageID #4.

On February 28, 2018, Dr. Yoo extracted Conklin's tooth using a local anesthetic. When the anesthetic wore off, Conklin says that he was denied his prescription pain medication, allegedly causing him severe pain, insomnia, and loss of concentration for more than forty days. *Id.*, PageID #13 (Count VI). He does not indicate whether this was Dr. Yoo's decision, or whether he was offered or received over-the-counter pain medication.

On April 3, 2018, visiting orthopedist Dr. Frauens met with Conklin to evaluate his need for orthopedic care. They discussed Conklin's pain, disabilities, and need for pain medication and orthopedic care. Dr. Frauens determined that orthopedic care could be deferred until Conklin's release. *Id.*, PageID #14 (Count VII). Conklin alleges this unnecessarily delayed treatment and increased his pain.

On or about April 18, 2018, Conklin was classified as a minimum security inmate, and therefore, he sought a transfer to a minimum security facility. *Id.*, PageID #15 (Count VIII). This request was denied, which he alleges violated his right to personal safety under the Eighth Amendment.

On or about June 26, 2018, Conklin was allegedly attacked by close custody HCF inmate Tupuelo. *Id.* Conklin asserts that he should not have been housed near Tupuelo, based on their different custody classifications. Conklin was taken to Pali Momi Medical Center and treated for contusions and facial trauma. *Id.*,

PageID #16 (Count IX). After he returned to HCF, Conklin requested follow up care from an outside specialist, as allegedly recommended by a Pali Momi emergency room physician. Dr. Toyama examined Conklin, diagnosed his continued pain and other symptoms as normal, and denied his request for outside specialist care.

On or about August 6, 2018, Conklin was moved to the special housing unit ("SHU") for thirty days after being found guilty of a misconduct violation. Conklin says the SHU has no ADA accessible shower, or other disability accommodations for special needs inmates. He says Dr. Toyama discontinued his medical memoranda for a handicap shower three days after he entered the SHU. *Id.*, PageID #18 (Count XI). Conklin was taken into the SHU shower and left alone for forty-five minutes. When staff returned, Conklin fell out of the shower stall, hitting his head on the floor. Conklin was treated at the medical unit. He alleges this violated the ADA and increased his pain, discomfort, and anxiety.

HCF Chief of Security ("COS") Antonio restricted all telephone calls indefinitely for SHU inmates, although Captain Snook told Conklin that he could contact his attorney in writing. *Id.*, PageID #22 (Count XV). Conklin alleges this denied him his right to call his attorney and interfered with his ability to fight the

misconduct charge and assist with his criminal appeal (for which he was represented by counsel).

On or about September 4, 2018, Dr. Toyama discontinued Conklin's medical memoranda for crutches, assistance, wheelchair use, and stairs restriction. *Id.*, PageID #19 (Count XII). Conklin alleges this conflicted with Dr. Frauens' finding that Conklin had multiple medical needs requiring accommodation. When Conklin transferred to general population on September 5, 2018, he requested reinstatement of all his medical memoranda. He does not say whether his memoranda were reinstated, but complains that the denial of the medical memoranda forced him to walk without crutches or a wheelchair, which increased his pain, mobility, insomnia, depression, and anxiety.

On or about September 18, 2018, Dr. Toyama approved Conklin's request to see a specialist for his continuing facial pain from Tupuelo's assault. He was taken to The Queen's Medical Center ("QMC") dental clinic, where he was diagnosed with "TMJ dislocation [and] timitus [sic]." *Id.*, PageID #17 (Count X). Conklin alleges Dr. Toyama caused him unnecessary pain, discomfort and distress by delaying this examination by a specialist, although he does not specify what treatment he received for these conditions.

On or about October 15, 2018, Conklin requested that the video of his fall from the SHU shower be preserved. *Id.*, PageID #23 (Count XVI). COS Antonio replied that the video camera was inoperative on that day, and if Conklin required proof, his attorney could request the written report of the incident. Conklin alleges Antonio was lying and concludes that someone destroyed the video to prevent a lawsuit.

Finally, Conklin alleges that an HCF guard warned him about filing too many grievances, because the HCF administration might retaliate against him. *Id.*, PageID #24 (Count XVII). Conklin alleges his case manager, Mufao, then retaliated against him by telling the parole board and presiding judge at his parole hearing that he was a "noncompliant trouble maker," lying about Conklin's graduation from high school, and about the reasons Conklin failed to complete required parole programs. Conklin claims Mufao's refusal to recommend him for parole resulted in his receiving a higher classification and the denial of parole in October 2018.

## III. <u>DISCUSSION</u>

Conklin brings this action pursuant to 42 U.S.C. § 1983. He alleges Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, and the ADA. To state a claim under 42 U.S.C. § 1983, a plaintiff

must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 also requires that there be an actual connection between the defendants' actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights.

## A.     Eleventh Amendment Immunity

Conklin explicitly names all DPS, HCCC, and HCF Defendants in their official capacities only. For Conklin's claims arising under the Constitution, rather than rights secured under the ADA, the "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d

11

1144, 1147 (9th Cir. 2007); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). Official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Conklin cannot seek damages regarding his constitutional claims against Defendants in their official capacity, and his release on parole moots his claims for prospective injunctive or declaratory relief. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.").

Conklin's constitutional claims for damages as alleged against DPS, HCCC, and HCF Defendants in their official capacities, are DISMISSED with prejudice.[6]

The Eleventh Amendment does *not* bar Conklin's monetary damages claims against official capacity Defendants under Title II of the ADA, however, or in their individual capacities for violations of state law. *Cf. Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n.9 (2001) (discussing Title I of the ADA); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 820, *amended by*, 271 F.3d 910 (9th Cir. 2001) (holding that, if state accepts federal funding (under Rehabilitation Act), Eleventh Amendment immunity is waived); *Razavi v. Traffic Court of Santa Clara Cty.*, 2019 WL 1676018, at *4 (N.D. Cal. Apr. 17, 2019); *Barrilleaux v. Mendocino Cty.*, 61 F. Supp. 3d 906, 914 (N.D. Cal. 2014).

## B.     Claims Against Inmate Tupuelo Are Dismissed

Conklin alleges HCF inmate Tupuelo, named in his individual capacity only, violated the Eighth Amendment when Tupuelo assaulted him. Conklin does not allege that Tupuelo acted under color of state law, claim that any State Defendant directed Tupuelo to attack him, or otherwise allege that Tupuelo was a state actor. Rather, Conklin alleges Tupuelo was a violent inmate who randomly,

---

[6] Conklin may allege claims for damages against Defendants in their individual capacities.

and, unprovoked, attacked him. Conklin alleges no facts from which the court can plausibly infer that Tupuelo was acting under color of state law. Conklin fails to state a colorable § 1983 claim against Tupuelo and this claim is DISMISSED without prejudice.

## C.   Supervisor Liability

To state a claim against a supervisor under § 1983, a plaintiff must establish that each "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "That means the inmate[] must show that each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). A prison "official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)). Thus, a "supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by

others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted) (alterations in original). A supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

A colorable supervisor-liability claim must show that the supervisor personally participated in the alleged deprivation, knew of the violation and failed to act to prevent it, or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations and quotation marks omitted)); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Even if Conklin named DPS Director Espinda, Deputy Director of Health Care John/Jane Doe 1, and Deputy Institutions Director John/Jane Doe 2 in their personal capacities, he fails to explain what they personally did or failed to do that violated his rights. He alleges nothing showing that Espinda and John/Jane Does

1-2 knew about, directed, or failed to intervene in any of the incidents about which Conklin complains, or allege that they instituted a policy that was the moving force behind his allegations. He does not even name them within any claim.

Conklin fails to state a colorable claim against DPS Director Espinda and John/Jane Doe 1 and 2 in their individual capacities and these claims are DISMISSED with leave to amend.

**D.     Doe Defendants**

The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, although Rule 10 requires a plaintiff to include the names of all parties in his complaint. Fed. R. Civ. P. 10(a). Doe defendants are generally disfavored, however, because it is impossible to serve an anonymous defendant.

A plaintiff may refer to unknown defendants as John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights. He may then use the discovery process to obtain the names of doe defendants and seek leave to amend to name those defendants, unless it is clear that discovery will not uncover the identities, or that the complaint will be dismissed on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Conklin names John/Jane Does 1-38, but fails to link any particular allegation to any specific, individual John or Jane Doe and explain how that individual personally violated his civil rights. Claims against John/Jane Does 1-38, if named in their individual capacities are DISMISSED with leave to amend.

## E.     Improper Joinder

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join as many claims as he has against an opposing party in one action. Fed. R. Civ. P. 18(a). But parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Unrelated claims that involve different defendants must be brought in separate lawsuits. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Kealoha v. Espinda*, 2017 WL 741570, at *4 (D. Haw. Feb. 24, 2017); *Tagle v. Nev. Dep't of Corr.*, 2016 WL 910174, at *2 (D. Nev. Mar. 9, 2016); *Washington v. Cal. Dep't of Corr.*, 2016 WL 6599812, at *1 (E.D. Cal. Nov. 7, 2016). This rule prevents confusion and ensures that prisoners

pay the required filing fees for their lawsuits and prevents them from

circumventing the three-strikes rule set forth under the Prison Litigation Reform

Act. *See George*, 507 F.3d at 607; 28 U.S.C. § 1915(g). The court may sever

misjoined parties as long as no substantial right is prejudiced by severance. Fed.

R. Civ. P. 21, *Coughlin*, 130 F.3d at 1350; *Evans v. Deacon*, 2016 WL 591758, at

*6 (D. Or. Feb. 12, 2016).

Conklin's claims against HCCC Defendants Dr. Gary Saldona and Norma

Nishimoto, alleging violations at HCCC between January 9 and February 22, 2018

(Counts I-III), are unrelated to his claims against HCF Defendants Dr. Toyama,

Dr. Yoo, Dr. Frauens, Dovie Borgess, Mahina Assily, Captain Snook, Lyle

Antonio, Francis Mufao, and John/Jane Does 3-38, alleging violations that

occurred at HCF (Counts IV-XVII). Conklin attempts to tie these disparate claims

together by alleging that all Defendants (except Tupuelo) are DPS employees. He

fails to show how these acts by unrelated Defendants, occurring at different

prisons, over more than a year, constitute the same transaction, occurrence, or

series of transactions or occurrences *and* will involve common questions of fact

and law.

Conklin cannot proceed in one suit with his claims against unrelated and

improperly-named Defendants. Counts I-III are SEVERED from Counts IV-XVII,

and the Complaint is DISMISSED with leave to amend to separate these causes of action.

If Conklin elects to file an amended pleading, he must decide which claims he will pursue in this action and file an amended pleading *herein* setting forth those claims against the appropriately named Defendants. Conklin may file a separate action, subject to separate filing fees and screening, alleging any remaining claims against the appropriately named Defendants.

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend those claims that are not dismissed with prejudice and that are properly joined together in one action on or before July 8, 2019. The amended pleading must address and cure the deficiencies in his claims noted above. Conklin may not expand his claims beyond those already alleged or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint, how they are linked to his claims against the named Defendants, and how they are appropriately brought in the amended complaint. Conklin may also file a second action alleging claims against Defendants that may not be joined in an amended pleading filed herein.

Conklin must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires an amended complaint to be complete in itself without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint supersedes the preceding complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012). If Conklin fails to timely file an amended complaint that cures the deficiencies in his claims noted in this Order, this action may be automatically dismissed and may count as a "strike" under 28 U.S.C. § 1915(g).[7]

///

///

---

[7] 28 U.S.C. § 1915(g) bars a civil action by a prisoner proceeding in forma pauperis:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## V. **NOTICES**

To enable Conklin to amend his pleadings, or to dismiss this action until he is able to separate and properly amend his claims, the court provides the following legal standards that appear to govern his claims. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez*, 203 F.3d at 1124, (stating a court should briefly explain a pro se litigant's pleading deficiencies when dismissing claims with leave to amend).

## A.     **Eighth Amendment**

As a convicted prisoner, Conklin's constitutional challenges to his conditions of confinement arise under the Eighth Amendment. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (discussing the differing constitutional standards that apply to convicted inmates as opposed to pretrial detainees). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim, an inmate must show that the prison official's acts or omissions deprived him of the minimal, civilized measure of life's necessities, and that the prison official acted with deliberate indifference. *Lopez*, 203 F.3d at 1133 (citation omitted).

### 1.       Inadequate Medical Care (Counts I-VII, IX-XI, XIV)

The Eighth Amendment is violated when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm*, 680 F.3d at 1122; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

To state a claim, a plaintiff "must show [(1)] a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It can be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1977);

*Snow*, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at 1122. An Eighth Amendment

claim may not be premised on even gross negligence by a physician. *Wood v.*

*Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner—or between

medical professionals—concerning what medical care is appropriate does not

amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*,

891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23 (citing *Jackson*

*v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff "must show that

the course of treatment the doctors chose was medically unacceptable under the

circumstances and that the defendants chose this course in conscious disregard of

an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citation and internal

quotation marks omitted).[8]

## 2.     *Failure-to-Protect (Count VIII)*

"The Eighth Amendment imposes a duty on prison officials to protect

inmates from violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d

1046, 1050 (9th Cir. 2015). A prisoner states an Eighth Amendment claim by

---

[8] Conklin alleges insufficient facts to state a claim against Drs. Saldona, Toyama, Frauens, and Yoo, and nurse Nishimoto. He disagreed with the care they provided or refused to provide, but he does not show these Defendants acted with deliberate indifference to his serious medical needs.

showing that prison officials acted with deliberate indifference to the threat of serious harm or injury to him. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013); *see Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (stating same with respect to harm inflicted by another inmate). A prison official must know that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it, before liability can attach. *Labatad*, 714 F.3d at 1160.

Conklin must allege facts showing how HCF Defendants were put on notice of a substantial risk of harm to him from Tupuelo and demonstrating their deliberate disregard of that risk.

## B.    Americans With Disabilities Act (Counts II, XI-XIII)

Title II of the ADA provides that:

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must allege that:

(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the

public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).

To recover damages under Title II of the ADA, a plaintiff must prove a defendant's intentional discrimination under a deliberate indifference standard, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). An entity's failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1139.

The proper defendant for a claim brought under Title II of the ADA is the public entity responsible for the alleged discrimination. *See Everson v. Leis*, 556 F.3d 484, 501 & n.7 (6th Cir. 2009) (collecting cases). Title II of the ADA does not provide for suit against a public official acting in his individual capacity. *Id.* A plaintiff cannot assert a claim under § 1983 against defendants in their individual capacities to vindicate rights created by the ADA. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Punitive damages are not available under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

## C.    First Amendment

### 1.    *Retaliation (Count XVIII)*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[9] *Rhodes*, 408 F.3d at 567-68; *accord Watison*, 668 F.3d at 1114-15; *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011), *overruled on other grounds Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

### 2.    *Restricted Telephone Calls in the SHU (Count XV)*

"[P]risoners 'have a First Amendment right to telephone access, subject to reasonable security limitations.'" *Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1986).  The right at issue is "the First Amendment right . . . to communicate with persons outside

---

[9] Conklin alleges insufficient facts to show that Mufao (1) did not support his parole application *because* Conklin filed grievances, rather than for Conklin's misconduct violation or some other reason; or that (2) Mufao's negative report chilled Conklin's exercise of protected rights and did not advance a legitimate correctional goal.

prison walls," and "a telephone provides a *means* of exercising this right." *Valdez*

*v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (emphasis in original). A

prison regulation that impinges on an inmate's constitutional right "is valid if it is

reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.

78, 89 (1987).

For a prison regulation to be valid, there must be a "rational connection

between the prison regulation and the legitimate government interest put forward

to justify it," and "the governmental objective must [itself] be a legitimate and

neutral one." *Id.* at 89-90. The court should consider "whether there are

alternative means of exercising the right that remain open to prison inmates." *Id.*

at 90 (internal quotations and citation omitted). Another consideration is "the

impact accommodation of the asserted constitutional right will have on guards and

other inmates, and on the allocation of prison resources generally." *Id.* "Finally,

the absence of ready alternatives is evidence of the reasonableness of a prison

regulation."[10] *Id.*

---

[10] Captain Snook told Conklin he could write to his attorney while he was in the SHU.
Conklin does not allege that he was denied calls or visits *from* his defense attorney, or that he
suffered any prejudice to his appeal by the thirty-day restriction. *See United States v. Hernandez*,
937 F.2d 1490, 1493 (9th Cir. 1991) (discussing the Sixth Amendment right to an attorney,
stating that a government intrusion on that right "is not sufficient by itself to cause a Sixth
Amendment violation. The defendant must have been *prejudiced* by such actions") (emphasis in
original). Moreover, prisoners generally have no right to an attorney at a prison disciplinary

(continued...)

To the extent Conklin asserts interference with access to the court from the denial of telephone calls to his attorney, he has a First Amendment right to litigate his claims "without *active interference* by prison officials." *Silva*, 658 F.3d at 1103. The right of access to the courts is a right to bring petitions or complaints to federal court and not a right to discover claims or effectively litigate them once they are filed. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. States are forbidden from "'erect[ing] barriers that impede the right of access of incarcerated persons." *Silva*, 658 F.3d at 1102 (internal citation omitted).

To have standing to bring an access-to-court claim, a plaintiff must plead and show an "actual injury," that is, evidence showing "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claims." *Lewis*, 518 U.S. at 348 (citation omitted).

///

///

---

[10](...continued)
hearing. *Wolff v. McDonald*, 418 U.S. 539, 556 (1974).

**D.      Due Process Counts (VIII, XV, XVI)**

Conklin vaguely alleges Defendants violated his right to due process when they denied his requests to transfer to a minimum security facility and for video evidence of his fall from the shower. The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). To state a claim, a plaintiff must identify the interest at stake. *Wilkinson*, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law. *Id.*

The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest is determined by focusing on the nature of the condition of confinement at issue. *Id.* at 221-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.* at 221 (citing *Sandin*, 515 U.S. at 484) (quotation marks omitted); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

### 1.  Denial of Transfer (Count VIII)

A prisoner has no constitutional right to be housed at a particular institution, *Meachum v. Fano*, 427 U.S. 215, 224 (1976), or to receive a particular security classification, *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).  Nor does a prisoner have a protected liberty interest in being housed in a less restrictive section of a facility. *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (constitution imposes few restrictions on legitimate administrative authority in housing decisions).  *Sandin* concluded that Hawaii's prisoners have no liberty interest in remaining in the general population.  *Sandin*, 515 U.S. at 485-86.  Nor is there any right to due process prior to reclassification to a higher level of security for non-punitive administrative reasons.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

### 2.  Denial of Telephone Contact and Destroyed Video Evidence

Conklin vaguely alleges the denial of due process based on the denial of telephone calls to his attorney in the SHU, and for the alleged destruction of video evidence of his fall from the SHU shower.  The court addressed Conklin's telephone access claim above, *see* § C.2, pp. 27-29, and discerns no due process violation in that claim.

Conklin's claim that video evidence was destroyed that could have been used to support a suit is wholly conclusory and frivolous. Conklin does not need video evidence to show that he required and was denied disability accommodations in the SHU. His medical records can prove his disability requirements and he can request photographic or other evidence that the SHU shower lacked such accommodations through discovery.

## VI.  CONCLUSION

(1)  Counts I-III are SEVERED from Counts IV-XVII, and the Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(2)  Conklin may file an amended pleading on or before July 8, 2019, in which he raises only claims that may be brought in one action. He may file a separate suit that alleges his remaining claims at his discretion, which will be subject to a submitting a separate civil filing fee or in forma pauperis application.

(3)  Failure to file a timely file an amended pleading that cures the deficiencies discussed herein may result in dismissal of this action without further notice and result in a strike pursuant to 28 U.S.C. § 1915(g).

///

///

///

(4)  The Clerk is DIRECTED to send Conklin two prisoner civil rights complaint forms so that he may comply with the directions of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 6, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Conklin v. Espinda, et al.*, No. 1:19 cv 00087 JMS RT; Scrng '19 Conklin19 87 jms #3 (8A, med care, R18, ftsc)